The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Dollar. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and the employment relationship existed between the parties at the relevant time.
2. EBI Companies/Security Insurance Company of Hartford was the carrier on the risk.
3. On 11 October 1994, the plaintiff sustained an admittedly compensable injury by accident which resulted in injuries to plaintiff's left thumb and first finger.
4. As a result of the admittedly compensable injury, the plaintiff received temporary total disability compensation at the rate of $166.68 per week, beginning on 19 October 1994 through 13 November 1994.
5. The plaintiff returned to work on 14 November 1994, at wages equal to his pre-injury wage.
6. The plaintiff requested a hearing, contending that the employer improperly calculated his average weekly wage as $250.00, and disputing the amount of permanent partial impairment compensation which had been offered.
7. At the hearing, an I.C. Form 22 for the plaintiff, as well as a Form 22 prepared on a comparable employee, were submitted into evidence.
8. The parties submitted twenty-six pages of medical reports into evidence.
* * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. On 11 October 1994, the plaintiff was employed as a rip saw operator with defendant-employer when his left thumb, first and second fingers were lacerated.
2. Following the compensable injury, the plaintiff was taken to Davis Community Hospital where he was treated by Dr. Robert I. Saltzman. After an initial physical examination, Dr. Saltzman found plaintiff to have a near complete amputation of the distal phalanx of the left thumb, a dorsal laceration to the bone of the first finger, and an abrading laceration to the radial side of the second finger. Dr. Saltzman recommended surgery to attempt to save the thumb, but advised plaintiff that the thumb may require amputation due to loss of blood supply.
3. On 11 October 1994, Dr. Saltzman performed surgery on the left thumb and first finger, during which two K-wires were inserted in the left thumb and a pin inserted in the first finger.
4. Dr. Saltzman released the plaintiff to return to limited work, light duty, one-handed work involving placing small hardware in plastic bags, folding paper instructions, placing them in the bag and stapling the bag. He also ordered physical therapy.
5. The plaintiff returned to light duty work on 14 November 1994 at a wage equal to his pre-injury wage.
6. On 28 November 1994, Dr. Saltzman removed the pins from the thumb, and occupational therapy was to focus on flexion and extension.
7. On 19 December 1994, Dr. Saltzman found that plaintiff retained good circulation in the thumb, though it was slightly purplish.
8. On 16 January 1995, Dr. Saltzman released the plaintiff to return to full work duty, and noted the comminuted distal phalanx of the left thumb was completely healed. Dr. Saltzman recommended a second opinion on the thumb and finger and for plaintiff to return in six months.
9. On 1 June 1995, the plaintiff fractured the left first finger when he struck it with a rubber hammer. Dr. Saltzman opined that plaintiff undergo fusion of the PIP joint due to flexion problems with the joint. However, the plaintiff refused the procedure because he did not want pins in the bone.
10. On 11 August 1995, Dr. Saltzman found plaintiff to be at maximum medical improvement, with a fifty percent permanent partial impairment to the left index (first) finger and a ten percent permanent partial impairment to the left thumb.
11. Dr. Saltzman advised the plaintiff that the only surgical procedure that might benefit him would be a PIP joint fusion of the index (first) finger, and the only limitation for that procedure would be pain in the use of the left hand. However, the plaintiff would not have pain in the hand as long as he exercised the index finger.
12. On 30 October 1995, the plaintiff returned to Dr. Saltzman where he complained of pain in the PIP joint of the left first finger after going from a warm to cold area. Dr. Saltzman prescribed a thermal glove for the left hand.
13. On 16 May 1996, the plaintiff returned to Dr. Saltzman with complaints that the finger and thumb were turning black and had no feeling after swimming. Dr. Saltzman found that there was no significant change in the status, circulation or sensory nerves of the finger.
14. On 19 February 1996, the plaintiff went to Dr. Richard W. Adams for a second opinion and rating. Dr. Adams found the plaintiff to have a significant soft tissue injury and loss with scarring of the tip of the left thumb, and a twenty degree flexion contracture of the thumb, for which Dr. Adams rated the plaintiff with a thirty percent permanent partial impairment to the thumb. The first finger was found to have a thirty degree flexion contracture with flexion to seventy-five degrees at the PIP joint, and thirty-five degrees flexion contracture at the DIP joint, for which he rated the first finger with a fifty-five percent permanent partial impairment.
15. The plaintiff began working for defendant-employer on 26 July 1994, and worked for eleven weeks through 11 October 1994, during which he earned $3,836.45, which yields an average weekly wage of $348.77 and a corresponding compensation rate of $232.53 per week. However, using this calculation would be unfair to the employer due to the seasonal nature of furniture manufacturing.
16. A Form 22 for a comparable employee who had been employed for a year prior to 11 October 1994 earned $17,107.31, which yields an average weekly wage of $328.99, and a weekly compensation rate of $219.34.
17. The number of hours worked by employees with defendant-employer varied depending on the demand for furniture, and the plaintiff worked extra hours during his term of employment with the defendant. Recognizing the seasonal nature of the job, it is the opinion of the undersigned that the average weekly wage for the comparable employee represents the fair and just wage.
18. The greater weight of the evidence suggests that the permanent partial impairment ratings assigned to plaintiff by his treating physician, Dr. Saltzman, reflect the actual impairment.
* * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Where the plaintiff had been employed for only a short period of time prior to the compensable injury and where his employment had been during a time when he was asked to work more hours than the usual hour, it would not be fair and just to calculate his average weekly wage based upon his actual earnings. Therefore, the better method is to utilize the wage chart drawn for a similar employee who had worked over the fifty-two weeks period prior to the injury. N.C. Gen. Stat. § 97-2 (5).
2. As a result of the compensable injury, the plaintiff is entitled to temporary total disability benefits at the rate of $219.34 for the period from 12 October 1994 through 13 November 1994, subject to a credit for the $166.68 per week paid for the period from 19 October 1994 through 13 November 1994. N.C. Gen. Stat. §§ 97-29, 97-42.
3. As a result of the compensable injury, the plaintiff is entitled to permanent partial disability benefits at the rate of $219.34 per week for seven and one-half weeks as a result of the ten percent rating to the left thumb, and for twenty-two and one-half weeks as a result of the fifty percent rating to the left first finger. N.C. Gen. Stat. § 97-31 (1) and (2).
4. The plaintiff is entitled to have defendants pay for medical expenses incurred as a result of the compensable injury. N.C. Gen. Stat. § 97-25.
* * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay temporary total disability compensation to the plaintiff at the rate of $219.34 per week for the period from 12 October 1994 through 13 November 1994, in a lump sum, subject to a credit for compensation previously paid at the rate of $166.68.
2. The defendants shall pay to plaintiff in a lump sum permanent partial disability compensation for seven and one-half weeks for the ten percent rating to the left thumb and twenty-five and one-half weeks for the fifty percent rating to the left first finger.
3. The defendants shall pay medical expenses incurred.
4. The defendants shall pay the costs.
This is the 21st day of May 1997.
 S/ ____________ DIANNE C. SELLERS COMMISSIONER
CONCURRING: S/ ____________ THOMAS J. BOLCH COMMISSIONER
S/ ____________ COY M. VANCE COMMISSIONER
DCS:jmf